IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


E.M., a minor child, AND THE PARENTS OF E.M.,

      Plaintiffs,

vs.                                         Civ. No. 06-0690 JH/DJS

ESPANOLA PUBLIC SCHOOL DISTRICT,
CARLOS F. VIGIL MIDDLE SCHOOL, A.K.A.L.
SECURITY, INC., SUPERINTENDENT DR.
DAVID COCKERHAM, PRINCIPAL BENJAMIN
GURULE, A.C., THE PARENTS OF A.C., a minor,
A.P., THE PARENTS OF A.P., a minor, B.L., THE
PARENTS OF B.L., a minor, AND DOES 1-20,

      Defendants.


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant AKAL Security, Inc.'s

(hereinafter "AKAL") Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil

Procedure 12(c), filed July 24, 2007 [Doc. 93], Defendant Dr. David Cockerham's Motion to

Dismiss on the Basis of Qualified Immunity, filed August 2, 2007 [Doc. 98], and Defendant

Benjamin Gurule's Motion to Dismiss on the Basis of Qualified Immunity, filed August 2, 2007

[Doc. 100].  The Court having considered the motions, memoranda, and relevant law, and being

otherwise fully informed, finds that Defendant AKAL's motion for judgment on the pleadings is

well taken in part and will be granted in part, Defendant Cockerham's motion to dismiss is well

taken and will be granted, and Defendant Gurule's motion to dismiss is well taken and will be

granted.

## **BACKGROUND**

On August 8, 2006, Plaintiffs filed their First Amended Complaint for Damages against Defendants alleging that three minor students physically and sexually attacked, assaulted, and threatened Plaintiff E.M. while E.M. was attending Carlos F. Vigil Middle School.  Specifically, Plaintiffs allege that on March 3, 2006, in a hallway where the surveillance and emergency devices were in a state of disrepair and where no security guards were on duty, student Defendants A.C., A.P., and B.L. attacked Plaintiff E.M. by ripping her shirt open, forcing her into a nearby bathroom, pinning her down, covering her mouth, and sexually and physically assaulting her.  Thereafter, Plaintiffs allege that A.C., A.P., and B.L. threatened to kill and inflict gang violence upon E.M. if she reported the attack to anyone.  Three days later, on March 6, 2006, Plaintiffs allege that A.C. and B.L. again approached E.M. at school and made sexual advances.  Thereafter, E.M. reported the incidents to school staff and administration as well as law enforcement.  Plaintiffs allege that since the assault, "school officials" have refused to guarantee or assure E.M. that she can safely return to school and have advised E.M. that she should not return to school.  Consequently, E.M. has completed her assignments at home, where she has been sequestered since the attack.  The three students A.C., A.P., and B.L. continue to attend Carlos F. Vigil Middle School.

Plaintiffs allege that Defendants Cockerham and Gurule created the danger to E.M. by allowing Defendants A.C., A.P., and B.L. to roam freely and unsupervised throughout the hallways when the state of the surveillance devices, emergency devices, and security personnel on duty was inadequate.  According to Plaintiffs, Defendants A.C., A.P., and B.L, have a history of violent behavior against other students at Carlos F. Vigil Middle School and/or in the

2

community at large, and despite this history, "school officials and administrators" permitted these Defendants to roam freely throughout the school and among the student population without supervision. Plaintiffs also allege that Defendants A.C., A.P., and B.L. are known by "school officials and administrators," including Defendant Mr. Gurule, to be associates of and/or members of the gang known as "The Westside/Thirteenth Street," yet they were permitted by "school officials and administrators" to roam freely through the school and among the student population without supervision. Plaintiffs allege that "school officials and administrators" knew that these three students had a history of behavior problems including, but not limited to, inflicting physical violence upon fellow students, and that the officials and administrators nonetheless allowed the students to roam freely through the school and among the student population without supervision. Plaintiffs further allege that upon information and belief, these three students have a history of sexual misconduct against other students at Carlos F. Vigil Middle School and/or in the community at large and yet they were permitted by "school officials and administrators" to roam freely through the school and among the student population without supervision. Plaintiffs also allege that "school officials and administrators" knew or should have known that the surveillance and emergency alarm equipment at the middle school was in a state of disrepair that rendered it inoperable, that the structural design and layout of the school halls created blind corners and other areas that were shielded from direct observation by potential security guards, administrators, and officials of the school, and that there were not security guards on duty or that the security guards were insufficient to protect the student population.

The captions of counts one through four of the Amended Complaint indicate that Plaintiffs bring tort claims for assault, battery, false imprisonment, and intentional infliction of

3

emotional distress against the Defendants A.C., A.P., and B.L.  The caption of count five of the

Amended Complaint indicates that Plaintiffs bring a claim for injunctive relief against all

Defendants.  The captions to counts six and seven of the Amended Complaint indicate that

Plaintiffs bring a claim for negligence and violation of E.M.'s constitutional right to substantive

due process against Defendants Espanola Public Schools, David Cockerham, Carlos F. Vigil

Middle School, Benjamin Gurule, AKAL, and Does 1-20.

In the Amended Complaint, only seven of 75 paragraphs contain allegations identifying

AKAL as the Defendant to whom the alleged conduct is attributed.  Specifically, in paragraph

nine, Plaintiffs allege, "Defendant A.K.A.L. Security, Inc. (*hereinafter* security company) is the

security company that contracted with Carlos F. Vigil Middle School and is a New Mexico

Corporation."  In paragraph ten, Plaintiffs allege,

> DOES 1through 20 are inclusive of the security company or
> companies that contracted with Carlos F. Vigil Middle School to
> provide security personnel on the schools [sic] premise, as well as,
> public employees and institutions that played a role in harming the
> Plaintiff. . . .  The Plaintiff does not know their true names and
> identities at this time, but will seek leave of Court to substitute
> their names for the Doe defendants when their names and identities
> have been ascertained.

In paragraph 26, Plaintiffs allege, "On March 3, 2006, school officials and administrators,

including the security company that contracted with the school, knew or should have known that

there were not security guards on duty at Carlos F. Vigil Middle School, or that the security

guards that were on duty were insufficient to protect the student population at large."[1]

---

[1] Prior to and after this allegation, Plaintiffs refer a multitude of times to "school official
and administrators," but do not insert the language "including the security company that
contracted with the school."

Plaintiffs on four occasions (all in count five of the Amended Complaint, which seeks injunctive relief) allege conducted perpetrated by "Defendants" generally (which by definition includes AKAL) and not by any particular Defendants.  In paragraphs 51 and 52, for example, Plaintiffs allege that E.M. fears that she is in imminent danger of irreparable injury and damage due to the acts and/or omissions of the Defendants," and that the "student population . . . is in imminent danger of irreparable injury and damage due to the acts and/or omissions of the Defendants."  In paragraphs 54 and 60, Plaintiffs allege that E.M. and the student population as a whole are in potentially "grave risk of imminent danger of irreparable injury and damage due to the acts and/or omissions of the Defendants," and that "[i]f Defendants are not enjoined from the aforementioned conduct, Ms. E.M. and the general student population as a whole [are] in imminent danger of special and general damages."[2]

The remaining allegations in the Amended Complaint are addressed specifically to A.C., A.P., B.L., Espanola Public Schools, David Cockerham, Carlos F. Vigil Middle School, Benjamin Gurule, and Does 1-20.  Other allegations also refer to "school officials and administrators."

## DISCUSSION

I.      AKAL's Motion for Judgment on the Pleadings.

Defendant AKAL moves for judgment on the pleadings with respect to Plaintiffs' claims against it.  Specifically, Defendant AKAL maintains that Plaintiffs have failed to state a claim

---

[2] The Amended Complaint, on these isolated occasions, refers generally to "Defendants," which includes AKAL.  Overwhelmingly, however, the Amended Complaint identifies in each allegation the specific Defendants to which the allegation applies.  Alternatively, the Amended Complaint indicates that a specific allegation relates to "school officials and administrators."

for negligence, Plaintiffs have failed to state a Section 1983 claim for violation of the constitutional right to substantive due process under the Fourteenth Amendment, and Plaintiffs have failed to demonstrate that they are entitled to injunctive relief.

In response, Plaintiffs and co-Defendants argue first that AKAL incorrectly assumes only a few of the allegations are applicable.[3]  According to Plaintiffs and co-Defendants, "school officials and administrators" includes AKAL.  The Court is not persuaded.  When Plaintiffs meant to include AKAL, Plaintiffs specifically so indicated.  In paragraph 26, Plaintiffs allege that "school officials and administrators, *including the security company that contracted with the school*,[4] knew or should have known that there were not security guards on duty at Carlos F. Vigil Middle School, or that the security guards that were on duty were insufficient to protect the student population at large."  Plaintiffs specifically inserted the language "including the security

_____

[3] On August 21, 2007, Defendants Espanola Public school District, Carlos F. Vigil Middle School, Superintendent Dr. David Cockerham, and Principal Benjamin Gurule filed a response to the motion for judgment on the pleadings.  AKAL argues that the response was untimely.  AKAL filed and served its motion on July 24, 2007.  As such, pursuant to Local Rule 7.6(a),  any response was due no later than August 7, 2007.  Although AKAL agreed to extend the time period for Plaintiffs to respond to the motion, it argues that it did not agree to extend the time for its co-Defendants to respond.
    The Stipulated Order for Enlargement of Time to Respond to the Motion for Judgment on the Pleadings provides, in the body of the Order, that "[t]he Response date to [the motion] was set at August 7, 2007, and the parties agree to enlarge the time for the Response date to and including August 21, 2007."  Although the Stipulated Order also states that the parties "stipulate to an enlargement of the time for Plaintiffs to respond to the [motion]," that provision falls in the heading paragraph.  Because the Stipulated Order does not specify that it will only extend the response date for Plaintiffs to August 21, 2007, and because AKAL has not argued that any prejudice will result from considering the Defendants' response, the Court rejects AKAL's argument.

[4] Plaintiffs earlier defined AKAL as the security company that contracted with the school.

6

company that contracted with the school," but failed to include that same language any other time it referred to "school officials and administrators."  Moreover, in paragraph 24, Plaintiffs alleged that the structural design and layout of the school halls created blind corners and other areas that were shielded from direct observation by *potential security guards*, administrators, and officials of the school.  Plaintiffs did not assume that school officials and administrators included security guards, and therefore added this language.  The Court further notes that even construing the Amended Complaint in a manner most favorable to Plaintiffs it is not reasonable to assume that a private company would fall within the label "school officials and administrators."

Plaintiffs also argue that the "Doe 1-20" Defendants include AKAL.  Indeed, in Amended Complaint, Plaintiffs specifically allege that "DOES 1through 20 are inclusive of the security company or companies that contracted with Carlos F. Vigil Middle School to provide security personnel on the schools [sic] premise, as well as, public employees and institutions that played a role in harming the Plaintiff."  Plaintiffs further allege that they do "not know the[] true names and identities [of Does 1-2] at this time, but will seek leave of Court to substitute their names for the Doe defendants when their names and identities have been ascertained."

Although there is no provision in the Federal Rules of Civil Procedure for the use of fictitiously-named defendants, some courts have permitted plaintiffs to name such defendants. These courts, however, have done so only where the plaintiffs did not know the identities of the alleged defendants at the time of the filing of the complaint but believed they could learn the identities through discovery or court intervention.  *See, e.g.*, *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Swartz v. Gold Dust Casino, Inc.*, 91 F.R.D. 543, 546 (D. Nev. 1981); *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir.

7

1994); *DePugh v. Penning*, 888 F. Supp. 959, 965 n.3 (N.D. Iowa 1995).  Here, there is no question as to the identity of AKAL.  Indeed, Plaintiffs named AKAL in the Complaint and Amended Complaint.  Logic, therefore, dictates that Plaintiffs cannot substitute AKAL for a Doe Defendant.  The fact that in paragraphs nine and ten of their Amended Complaint Plaintiffs allege that "A.K.A.L. . . . (*hereinafter* security company) is the security company that contracted with Carlos F. Vigil Middle School," and  that "DOES 1 through 20 are inclusive of the security company or companies that contracted with Carlos F. Vigil Middle School" does not persuade the Court otherwise.

Plaintiffs also argue that the allegations of the Amended Complaint must be analyzed under a "rule of reluctance" standard.  Plaintiffs argue that the Supreme Court established the "rule of reluctance" in *Bell v. Preferred Life Assurance Society*, 320 U.S. 238 (1943), and that the rule strongly disfavors a final determination on mere pleading allegations alone.  In *Bell*, the respondents asserted that the petitioner could not meet the jurisdictional amount in controversy requirement because the petitioner's complaint did not allege the type of "gross fraud" essential for an award of punitive damages under Alabama law.  The Supreme Court of Alabama had previously defined that the type of "gross fraud" that would support punitive damages as "representations made with a knowledge of their falseness (or so recklessly made as to amount to the same thing), and with the purpose of injuring the plaintiff."  *Id.* at 241 (citing *Southern Building & Loan Assn. v. Dinsmore*, 144 So. 21, 23 (Ala. 1932)).  The *Bell* complaint alleged that the fraudulent representations "were false, and were known to be false when made and uttered with a reckless disregard for the truth"; that petitioner "relied upon them, and had a right to rely upon them"; and that he "would not have applied for such certificate except for such false

8

representations." *Id.* The Supreme Court concluded that the complaint "plainly" alleged "the equivalent of 'gross fraud' as those words are defined by the Alabama courts." *Id.* The Court further noted that "even if the fraud were not formally alleged to be 'gross,' a complaint filed in a federal court should not be dismissed for want of jurisdiction because of a mere technical defect such as would make it subject to a special motion to clarify." *Id.* at 241-42 (citing *Sparks v. England*, 113 F.2d 579 (8th Cir. 1940); *Chicago, R. I. & P. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194 (1913)).

Nowhere in *Bell* does the Supreme Court articulate a "rule of reluctance" as the standard for deciding a motion to dismiss for failure to state a claim. Rather, the Court, in dicta, noted that a complaint in federal court should not be dismissed for want of jurisdiction because of a mere technical defect that could be remedied by a special motion to clarify. *Id.* The Tenth Circuit, likewise, has only cited *Bell* three times in the context of determining the measure of damages for diversity jurisdiction and whether punitive damages could factor into the equation. *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994); *Emland Builders, Inc. v. Shea*, 359 F.2d 927, 930 (10th Cir. 1966); *Burrell v. Burrell*, No. 00-2031, 2000 U.S. App. LEXIS 19027, at *5 (10th Cir. Aug. 7, 2000). Indeed, no case law supports Plaintiffs' conclusion that the "rule of reluctance" is the standard under which a court must review a Rule 12(c) motion; no federal case even contains the phrase "rule of reluctance."

Plaintiffs' citation to *Swierkiewicz v. Sorema NA*, 534 U.S. 506 (2002), is likewise unavailing. In *Swierkiewicz*, the petitioner-plaintiff argued that the Court of Appeals erroneously dismissed the complaint alleging various employment discrimination claims for failure to plead the elements of a *McDonnell Douglas* prima facie case. The Supreme Court

9

reversed, holding that the prima facie case under *McDonnell Douglas* was an evidentiary standard, not a pleading requirement. *Id.* at 510. The Court also noted that *McDonnell Douglas* only applies if a plaintiff cannot produce direct evidence of discrimination, and that it would be incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he or she might ultimately need to prove to succeed on the merits if direct evidence of discrimination was discovered. *Id.* at 511 ("Under the Second Circuit's heightened pleading standard, a plaintiff without direct evidence of discrimination at the time of his complaint must plead a prima facie case of discrimination, even though discovery might uncover such direct evidence.").

Neither *Bell* nor *Swierkiewicz* stand for the proposition that a "rule of reluctance" is the standard for determining a motion for judgment on the pleadings. Rather, the standard applicable to a Rule 12(c) motion for judgment on the pleadings is the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). In considering a Rule 12(b)(6) motion to dismiss, a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (the rules also do not require a court to accept legal conclusions or unwarranted inferences) (citation omitted). To state a claim, a plaintiff must go beyond mere "labels and conclusions" in stating the grounds on which she is entitled to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations. *Id.* (citations omitted).  However, factual allegations must be enough to raise a right to relief above the speculative level. *Id.* (citations omitted).

Having rejected Plaintiffs' threshold arguments, the Court next must determine whether Plaintiffs allegations state a claim for relief for negligence and a violation of the right to substantive due process.  The Court also must determine whether Plaintiffs properly have alleged that they are entitled to injunctive relief from AKAL.  The Court addresses each of these questions in turn.

      A.    <u>Negligence</u>.

In support of its motion for  judgment on the pleadings, AKAL argues that there are no allegations in the Amended Complaint from which the Court could conclude that AKAL owed any legal duty to Plaintiffs.  Plaintiffs allege only that "Espanola Public Schools, David Cockerham, Carlos F. Vigil Middle School[,] Benjamin Gurule and Does 1-20, have a clear and well-established duty to protect Ms. E.M. and the general student population as a whole from dangerous conditions existing on the premises of Carlos F. Vigil Middle School."

Plaintiffs argue, however, that AKAL owed a duty to E.M. and the student population because the students were third party beneficiaries of the contract between AKAL and Carlos F. Vigil Middle School.  In the Amended Complaint, Plaintiffs allege that "Defendant A.K.A.L. Security, Inc. (*hereinafter* security company) is the security company that contracted with Carlos F. Vigil Middle School and is a New Mexico Corporation."  Plaintiffs further allege that student Defendants A.C., A.P., and B.L. attacked E.M., also a student at Carlos F. Vigil Middle School, on school premises in a hallway where no security guards were on duty.  Although the Amended Complaint does not contain an allegation specifically raising a third party beneficiary theory, the

Complaint contains facts from which one could infer a possible duty. *Cf. Flores v. Baca*, 117

N.M. 306, 871 P.2d 962 (N.M. 1994) ("when a promisor's misfeasance in the performance of a

contract foreseeably may cause personal injury to an intended third-party beneficiary, the latter

would have a cause of action in both tort and contract for personal injuries proximately caused

by the misfeasance") (citations omitted).  Based upon the allegations in the Amended Complaint,

which the Court must construe in Plaintiffs' favor, the Court concludes that Plaintiffs have stated

factual allegations sufficient to support a claim of duty.[5]

AKAL also argues that Plaintiffs have failed to allege any facts that indicate AKAL

breached any duty it had to E.M.  According to AKAL, Plaintiffs allege only (1) that "Espanola

Public Schools, David Cockerham, Carlos F. Vigil Middle School[,] Benjamin Gurule and Does

1-20, knowingly and wantonly breached their duty by continuing a policy, pattern and/or

practice of allowing students with known propensities for gang violence, behavioral problems

and violence toward other students to roam free and unsupervised throughout school halls," and

(2) that Espanola Public Schools, David Cockerham, Carlos F. Vigil Middle School[,] Benjamin

Gurule and Does 1-20, knowingly and wantonly breached their duty by allowing Mr. A.P., Mr.

B.L, and/or Mr. A.C., who had been disciplined by officials and administrators . . . for

misbehavior, violence toward other students and/or gang violence in the past to roam freely

unsupervised through the hallways."

AKAL ignores other relevant allegations in the Amended Complaint.  Namely, Plaintiffs

allege that on March 3, 2006, school officials and administrators, *including the security company*

_____

[5] The Court is not holding as a matter of law that AKAL had a duty to E.M., but rather is
only holding that Plaintiffs are entitled to proceed with their claim of duty against AKAL.

*that contracted with the school*, knew or should have known that there were not security guards on duty at Carlos F. Vigil Middle School, or that the security guards that were on duty were insufficient to protect the student population at large.  Based upon this allegation, the Court concludes that Plaintiffs have stated facts sufficient to indicate that AKAL may have breached its duty to E.M.  Accordingly, the Court denies Defendant AKAL's motion for judgment on the pleadings with respect to Plaintiffs' negligence claim against it.

B.    <u>Substantive Due Process</u>.

AKAL argues that there are no allegations in the Amended Complaint to support Plaintiffs' constitutional due process claims against it.  Specifically, AKAL maintains that Plaintiffs have not alleged that AKAL acted with deliberate indifference or that AKAL acted under color of state law.

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'"  *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) (quoting U.S. Const. Amend. XIV § 1).  Section 1983 of Title 42, in turn, "permits an individual to pursue an action against any person who 'under color of any statute, ordinance, regulation, custom, or usage,' deprives the plaintiff of 'any rights, privileges, or immunities secured by the Constitution and laws.'"  *Id.* (quoting 42 U.S.C. § 1983).

To establish a violation of a constitutional right pursuant to Section 1983, a plaintiff must establish deliberate conduct or a deliberate lack of conduct on the part of an action.  *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  The Due Process Clause is not implicated by a negligent act of an official or state actor causing unintended loss or injury to life, liberty, or property.  *Id.*

13

at 327, 328, 330-31.  AKAL maintains that the Amended Complaint contains numerous

allegations as to the conduct of other Defendants, but that it is silent as to the conduct allegedly

engaged in, or not engaged in, by AKAL.  The only allegation related to AKAL's conduct is that

on March 3, 2006, school officials and administrators, including the security company that

contracted with the school, knew or should have known that there were not security guards on

duty at Carlos F. Vigil Middle School, or that the security guards that were on duty were

insufficient to protect the student population at large.  This allegation does not establish

deliberate conduct or lack of conduct on the part of AKAL.  Rather, at most it demonstrates that

AKAL was negligent.  Accordingly, the Court concludes that Plaintiffs have not proved facts

sufficient to state a substantive due process claim.

Plaintiffs' Amended Complaint also fails to plead facts establishing that AKAL acted

under color of state law or in concert with a state actor, or that AKAL's actions can be

chargeable to the state.  In order to hold a private party liable under 1983 for a constitutional

violation requiring state action, a plaintiff must show that the party's conduct is "fairly

attributable to the State."  *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996).  As stated in

*Wyatt v. Cole*, 504 U.S. 158, 162 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937

(1982)),

> This requirement is satisfied . . . if two conditions are met.  First,
> the "deprivation must be caused by the exercise of some right or
> privilege created by the State or by a rule of conduct imposed by
> the State or by a person for whom the State is responsible."
> Second, the private party must have "acted together with or . . .
> obtained significant aid from state officials" or engaged in conduct
> "otherwise chargeable to the State."

In *Lee v. Town of Estes Park*, 820 F.2d 1112, 1114 (10th Cir. 1987), the Tenth Circuit stated, "In

14

order to hold a private individual liable under 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State."

Plaintiffs' sole allegation relevant to the inquiry of state action is that AKAL is the security company that contracted with Carlos F. Vigil Middle School and is a New Mexico corporation. This allegation is not sufficient to establish that AKAL was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that AKAL's conduct is in some other way chargeable to the State. Accordingly, the Court grants AKAL's motion for judgment on the pleadings with respect to Plaintiffs' Section 1983 claim against it.

     C.    <u>Injunctive Relief</u>.

To maintain a claim for damages in the form of injunctive relief against AKAL, Plaintiffs must first allege an underlying cause of action against AKAL that merits injunctive relief. The Court has denied AKAL's motion for judgment on the pleadings with respect to Plaintiffs' negligence claim against it. Therefore, Plaintiffs have sufficiently alleged an underlying cause of action.

AKAL argues that Plaintiffs' claim for injunctive relief nonetheless must fail. AKAL properly points out that all of Plaintiffs' allegations seek an order from this Court requiring school officials and administrators to repair allegedly inoperable surveillance devices and increase security around the school, and none of the allegations seek an order compelling AKAL to take action. Moreover, none of Plaintiffs' allegations establish that AKAL has any control

over the surveillance devices or school grounds so that it could actually conduct the repairs or increase security.  Accordingly, the Court concludes that Plaintiffs have not plead facts sufficient to establish that they have a claim for injunctive relief against AKAL.  The Court therefore grants AKAL's motion for judgment on the pleadings in AKAL's favor on the injunctive relief claim.

II.     Defendants Cockerham's and Gurule's Motions to Dismiss.

        A.      Qualified Immunity Standard.

        Defendants Cockerham and Gurule move to dismiss Plaintiffs' Amended Complaint on the ground of qualified immunity.  The Court already has set forth the proper standard for analyzing a motion to dismiss.  *See supra* at 10.  The standard for analyzing a motion to dismiss, however, shifts slightly if a defendant raises qualified immunity as a defense to a suit under 42 U.S.C. Section 1983.  Qualified immunity bars Section 1983 suits against defendants in their individual--but not official--capacities.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted).  The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability."  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  It provides defendants not only with immunity from liability but also with immunity from suit.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It grants defendants the "right . . . . to avoid standing trial . . . [and] to avoid the burdens of such pretrial matters as discovery."  *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (citation and internal quotations omitted).  As a result, the Tenth Circuit "'repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'"  *Id.* at 1185 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curium)); *see*

16

*also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Although "summary judgment provides the typical vehicle for asserting a qualified immunity defense," the defense can be raised on a motion to dismiss.  The Tenth Circuit has held, however, that "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment," because a "'motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.'" *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citation omitted) (quoting *Lone Star Indus. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992)).

Once a defendant raises the defense of qualified immunity on a motion to dismiss, a plaintiff must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established so that [a] reasonable official[] in [the] defendant['s] situation would have understood [his or her] conduct violated that right." *Leibson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996); *see also, e.g.*, *Saucier*, 533 U.S. at 201-02.  If a plaintiff fails to satisfy this two-part burden, a court must grant the defendant qualified immunity.  *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). A court's review of a qualified immunity defense raised in a motion to dismiss is limited to the pleadings.  *See Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (citation omitted).[6]

B.    Substantive Due Process.

_____

[6] In response to Defendants Cockerham's and Gurule's Motions to Dismiss, Plaintiffs argue that the proper standard for evaluating the motions is the "rule of reluctance."  The Court, however, already has rejected this standard in ruling upon Defendant AKAL's motion for judgment on the pleadings.  *See supra* at 8-10.  For the same reasons, the Court concludes that the "rule of reluctance" does not govern the Court's analysis of Defendants Cockerham's and Gurule's Motions to Dismiss.

Defendants Cockerham and Gurule argue that the Court should dismiss Plaintiffs' Amended Complaint because they are entitled to qualified immunity from Plaintiffs' Section 1983 substantive due process claims.  "Generally, state actors may only be held liable under § 1983 for their own acts, and not for the violent acts of third parties."  *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).  Courts have recognized two exceptions to this rule applicable to plaintiffs bringing substantive due process claims:  (1) the "special relationship" exception; and (2) the "danger creation" exception.  *See id.* (citation omitted).

       1.     <u>Special Relationship</u>.

A "special relationship . . . exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual . . . ."  *Johnson v. Holmes*, 455 F.3d 1133, 1142-43 (10th Cir. 2006) (citing *DeShaney*, 489 U.S. at 199-200).  The special relationship arises when "the state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty."  *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998).  "'The affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it has imposed on his [or her] freedom to act on his [or her] own behalf.'"  *Id.* (quoting *DeShaney*, 489 U.S. at 200); *Eckert v. Town of Silverthorne*, No. 00-1030, 2001 U.S. App. LEXIS 15475 (10th Cir. July 9, 2001) ("[i]nterference with an individual's ability to fend for themselves is the cornerstone to the special relationship exception to DeShaney) (citing DeShaney, 489 U.S. at 201).  Absent involuntary restraint, however, no duty to protect arises under the special-relationship theory.  *Armijo*, 159 F.3d at 1261.

18

The Tenth Circuit has held that the state has a special relationship with children in state custody or foster care, *Yvonne L. v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 890 (10th Cir. 1992), inmates at a state-run prison, *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1103 (10th Cir. 2005), and patients committed to a state mental institution, *Martinez v. Uphoff*, 265 F.3d 1130, 1133 n.3 (10th Cir. 2001) (citation omitted).  "The Tenth Circuit[, however,] has held repeatedly that because schools do not provide for a child's basic needs, schoolchildren do not have a special relationship with the government."  *Deanzona v. City & County of Denver*, 222 F.3d 1229 (10th Cir. 2000) (citing *Maldonado v. Josey*, 975 F.2d 727, 732-33 (10th Cir. 1992)).

In *Graham v. Independent Sch. Dist. No. I-89*, 22 F.3d 991, 994-95 (10th Cir. 1994), the Tenth Circuit held that schools have no duty under the Due Process Clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented.  The *Graham* court acknowledged that if the state takes a person into custody or holds that person against his or her will, the state assumes some measure of a constitutionally mandated duty of protection.  *Id.* at 994.  The state has a special relationship only with "individuals dependent completely on the state to satisfy their basic human needs."  *Maldonado*, 975 F.2d at 732-33.  The *Graham* court concluded that "[c]ompulsory attendance laws for public schools[] . . . do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school.  *Id.* (citing *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir. 1992)).  Where the parents are still the primary care givers for the child there is no special relationship and no due process violation.  *Deanzona*, 222 F.3d at 1234 (citing *Maldonado*, 975 F.2d at 732-33).  This is because "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it

19

has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200.

Plaintiffs have cited no authority in their response supporting the proposition that a special relationship between the state and E.M. existed, and the Court finds none. To the contrary, Tenth Circuit precedent clearly provides that no special relationship exists. Plaintiffs, therefore, have not satisfied their qualified immunity burden of stating a substantive due process violation based upon a special relationship theory. Accordingly, the Court grants Defendants Cockerham's and Gurule's Motion to Dismiss Plaintiffs' substantive due process claims to the extent those claims are based upon a special relationship theory.

> 2.   Danger Creation.

Under a substantive due process, danger-creation theory, "a state actor may be held liable for the violent acts of a third party if the state actor 'created the danger' that caused the harm." *Ruiz*, 299 F.3d at 1182 (quoting *Armijo*, 159 F.3d at 1262). "To state a prima facie case under th[is] exception, a plaintiff must show that (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience." *Id.* at 1182-83 (citing *Armijo*, 159 F.3d at 1262-63). Defendants Cockerham and Gurule argue that Plaintiffs have failed to establish the first, second, fourth, and sixth requirements and that the Court therefore should dismiss the Amended Complaint on the grounds of qualified immunity for failure to state a substantive due process claim.

a.      First Requirement:  Creation of Danger.

"'The key to the state-created danger cases lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid.'"  *Armijo*, 159 F.3d at 1263 (quoting *Johnson v. Dallas Ind. Sch. Dist*., 38 F.3d 198, 201 (5th Cir. 1994)) (additional citations omitted).  "'Thus the environment created by the state actors must be dangerous; they must know it is dangerous; and to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third-party's [acts] to occur.'"  *Id.* (quoting *Johnson*, 38 F.3d at 201) (additional citations omitted).  To satisfy these requirements, a plaintiff must show affirmative conduct on the part of the defendant that "'creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been.'"  *Gonzales v. City of Castle Rock*, 307 F.3d 1258, 1263 (10th Cir. 2002) (citing *Armijo*, 159 F.3d at 1263).  In assessing the affirmative conduct factor, "it is important to distinguish between affirmative conduct that creates or enhances a danger and a failure to act that merely does not decrease or eliminate a pre-existing danger.  This distinction, while subtle, is critical." *Id.*

Defendants Cockerham and Gurule maintain that Plaintiffs' claim must fail because they have not alleged affirmative conduct that created a danger.  In support of their argument, Defendants cited *Graham v. Independent Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994), in which the Tenth Circuit held that school districts are not liable for the shooting and stabbing of students on school premises based on their creation of hazardous situations--*i.e.*, placing aggressors and victims in same location--where the aggressors' enrollment preceded any

21

knowledge the school districts may have had of the danger.  The Tenth Circuit explained that

"[n]otwithstanding defendants' specific knowledge of the propensities of the aggressors, any

danger to the victims was 'too remote a consequence of [defendants'] action to hold them

responsible under the federal civil rights law.'"  *Id.* (quoting *Martinez v. California*, 444 U.S.

277, 285 (1980)).  "In most every circuit court decision imposing 1983 liability because the State

affirmatively created or enhanced a danger, 'the immediate threat of harm has a limited range

and duration' unlike the indefinite risk created by enrolling [the aggressor] in public school."  *Id.*

(quoting *Dorothy J. v. Little Rock Sch. Dist*, 7 F.3d 729, 733 n. 4 (8th Cir. 1993)).

      Plaintiffs have alleged that Defendants Cockerham and Gurule created the danger to E.M.

by allowing Defendants A.C., A.P., and B.L. to roam freely and unsupervised throughout the

hallways when the state of the surveillance devices, emergency devices, and security personnel

on duty was inadequate.  Plaintiffs further alleged that Defendants A.C., A.P., and B.L., have a

history of violent behavior against other students at Carlos F. Vigil Middle School and/or in the

community at large, and despite this history, school officials and administrators permitted these

Defendants to roam freely throughout the school and among the student population without

supervision.  Plaintiffs also have alleged that these three Defendants are known by school

officials and administrators, including Defendant Mr. Gurule, to be associates of and/or members

of the gang known as "The Westside/Thirteenth Street" yet they were permitted by school

officials and administrators to roam freely through the school and among the student population

without supervision.  Plaintiffs allege that school officials and administrators  knew that these

three students had a history of behavior problems including, but not limited to, inflicting

physical violence upon fellow students, and the officials and administrators nonetheless allowed

the students to roam freely through the school and among the student population without supervision.  Plaintiffs further allege that upon information and belief, these three student have a history of sexual misconduct against other students at Carlos F. Vigil Middle School and/or in the community at large and yet they were permitted by school officials and administrators to roam freely through the school and among the student population without supervision.  '

These allegations are not sufficient to establish an affirmative act by Defendants Cockerham or Gurule that created a danger.  Enrolling Defendants A.C., A.P., and B.L., at Carlos F. Vigil Middle School is not sufficient.  As in *Graham*, the allegations do not establish that Defendants Cockerham and Gurule were aware of the danger presented by Defendants A.C., A.P., and B.L. *prior to* admitting these students to Carlos F. Vigil Middle School.

Plaintiffs allege that Defendants created the danger by allowing the students to roam the hallways after they were enrolled in school.  Plaintiffs were required to allege *affirmative* conduct that creates or enhances a danger.  A failure to act, such as a failure to restrain Defendants A.C., A.P., and B.L., from roaming freely through the hallways, that does not decrease or eliminate a pre-existing danger, is not sufficient.  *Cf. Gonzales*, 307 F.3d 1258 (finding no affirmative conduct where individual defendants simply failed to act, and holding that the lack of affirmative conduct was fatal to the plaintiff's substantive due process claim).  Likewise, placing E.M. in the same danger that already existed does not constitute creating a danger.  *Cf. Armijo*, 159 F.3d at 1263 ("if the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed").

The Court further notes that "[a]ffirmative conduct for purposes of § 1983 should

typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz*, 299 F.3d at 1183 (citing *Graham*, 22 F.3d at 995; *Dorothy J.*, 7 F.3d at 733 n.4).  Here, the act of enrolling Defendants A.C., A.P., and B.L. did not pose an immediate threat of harm that had a limited range and duration.  Likewise allowing A.C., A.P., and B.L. to roam the halls freely and without supervision did not pose an immediate threat of harm that had a limited range and duration.  Rather, any harm from enrolling A.C., A.P., or B.L., or allowing these students to roam the halls freely without supervision would be ongoing in nature.  *Cf. id.* (holding that the improper licensure of a day care facility did not impose an immediate threat of harm but rather a threat of an indefinite range and duration, where a child died of injuries sustained at the facility).

Moreover, the Tenth Circuit has held that the affirmative conduct in question "should be directed at a discrete plaintiff rather than at the public at large." *Id.* (holding that the licensure of the day care facility affected the public at large and was not aimed at the child or his mother directly) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3d Cir. 1995) (holding that the plaintiff, whose home was deliberately burned by a volunteer firefighter, could not maintain a § 1983 claim on the sole basis that the fire department failed to properly screen firefighter applicants because the department's conduct affected the public at large and was not directed at the plaintiff)).  The Amended Complaint here contains no allegations demonstrating that the act of enrolling Defendants A.C., A.P., and B.L. was directed at E.M. as opposed to the student population at large.

For these reasons, the Court concludes that Plaintiffs have not alleged conduct sufficient to satisfy the first requirement of a danger-creation theory.  Plaintiffs therefore have failed to

meet their qualified immunity burden of alleging facts that state a constitutional violation.[7]

               b.      <u>Sixth Requirement:  Shocks the Conscience</u>.

Plaintiffs also have failed to meet their qualified immunity burden for a second, independent reason:  Plaintiffs have failed to allege conduct by Defendants Cockerham and Gurule that is shocking to the conscience.  To state a substantive due process claim, Plaintiffs must allege conduct with respect to each defendant that is sufficient to "shock the conscience" of federal judges.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992); *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995).  In determining whether conduct "shocks the conscience" so as to rise to the level of a substantive due process violation, the Tenth Circuit has instructed courts to bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims:  (1) the need for restraint in defining the scope of substantive due process claims, (2) the concern that Section 1983 not replace state tort law, and (3) the need for deference to school officials and bodies in making decisions impacting student discipline and safety.  *See id.* (citations omitted).  These factors weigh in favor of reserving application of the danger creation theory as the basis for a constitutional claim for exceptional circumstances.  *See Ruiz*, 299 F.3d at 1184 (citing *Eckert v. Town of Silverthorne*, No. 00-1030, 2001 WL 1152781 (10th Cir. July 9, 2001)).

---

       [7] The Court further notes that Plaintiffs have failed to meet their second qualified immunity burden of demonstrating that the substantive due process right was clearly established so that a reasonable official in Defendants' situation would have understood his or her conduct violated that right.  Tenth Circuit authority directly on point explicitly provides that school districts are not liable for placing aggressors and victims in same location where the aggressors' enrollment preceded any knowledge the school districts may have had of the danger.  *See supra* at 21-22.  Accordingly, any constitutional due process right possessed by E.M. would not be clearly established.

Consistent with these principles and Tenth Circuit precedent, a plaintiff typically must allege conduct involving deliberately wrongful government decisions rather than merely negligent government conduct. *See Uhlrig*, 64 F.3d at 573 (citing *Collins*, 503 U.S. at 127 n.10). To satisfy this requirement, a plaintiff first must allege facts indicating an intent to harm or an intent to place a person unreasonably at risk of harm. *See id.* "Where the state actor has the luxury to truly deliberate about the decisions he or she is making, something less than unjustifiable intent to harm, such as calculated indifference, may suffice to shock the conscience." *Castaldo v. Jefferson County Sheriff*, No. 00-B-1611, 2001 U.S. Dist. LEXIS 24531, *81-82 (D. Colo. Nov. 27, 2001) (citation omitted); *see also Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1238 (10th Cir. 1999) ("to hold [the defendant] liable for the injuries suffered by [the plaintiff] at the hands of a private individual, plaintiff-appellant must demonstrate intentional or reckless, affirmative conduct on the part of [the defendant] which created the danger"). The Supreme Court specifically has admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist is not necessarily conscience shocking. *See Uhlrig*, 64 F.3d at 574 (citing *Collins*, 503 U.S. at 128). The Tenth Circuit has held, however, that "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. . . . [T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking," *id.*, *i.e.*, the conduct must be "so egregious, outrageous and fraught with unreasonable risk so as to shock the conscience," *id.* at 576.

The Court need not decide whether the allegations rise to the level of intentional or

26

reckless conduct, because the Court concludes that Plaintiffs have failed to allege facts indicating that Defendants had knowledge that their acts would cause harm to E.M. in particular.

A key factor to determining whether conduct shocks the conscience is a defendant's knowledge of a specific risk to a particular plaintiff.  For example, in two separate cases involving attacks by male inmates on female prison staff, the federal circuit courts have reached opposite results based upon the presence of knowledge.  In the first case, *L.W. v. Grubbs*, the Ninth Circuit held that the conduct of the defendant supervisors shocked the conscience where the defendants required a plaintiff nurse to work alone in the medical clinic of a detention center with a known violent sex offender and the offender assaulted, battered, kidnaped, terrorized and raped the plaintiff.  *See* 974 F.2d 119, 120 (9th Cir. 1992).  In support of its holding, the circuit noted that the defendant supervisors had promised the plaintiff nurse before hiring her that she would not be required to work alone with sex offenders and the defendant supervisors knew that the inmate (I) had an extraordinary history of unrepentant violence against women and girls, (ii) was likely to assault a female if left alone with her, (iii) would be alone with plaintiff, and (iv) would be able to overpower plaintiff.  *See id.* at 121-22.

In contrast, in *Leibson v. New Mexico Corrections Dep't*, the Tenth Circuit held that a plaintiff librarian working in a maximum security unit of New Mexico State Penitentiary did not allege conscience-shocking behavior where the state defendants removed a corrections officer from the library and the plaintiff librarian was kidnaped, held hostage, and sexually assaulted by

27

an inmate library assistant.[8]  *See* 73 F.3d 274, 275, 277 (10th Cir. 1996) (distinguishing the case

from *Grubbs* in which Defendants independently had created an opportunity for and facilitated

the inmate's assault on the plaintiff).  In *Leibson*, the defendants did not possess knowledge of a

particular risk to the plaintiff librarian by the particular inmate in question.  *See id.*

Indeed, on repeated occasions the Tenth Circuit has found conduct conscience shocking

when defendants have acted with knowledge of a specific risk *to a particular plaintiff*.  *See, e.g.*,

*Currier v. Doran*, 242 F.3d 905, 909-910 (10th Cir. 2001) (conduct of state defendants shocked

the conscience where state granted custody of two children to their father even though a state

social worker was aware of the father's history of financial irresponsibility, noticed bruises on

the children on at least two occasions while the children were in the physical custody of the

father, and was informed on at least three occasions that the children's father allegedly was

abusing the children); *Armijo*, 159 F.3d at 1256-57, 1264 (school administrators's behavior

shocked the conscience where administrators suspended sixteen-year old special education

student who was known to be suffering from depression and suicidal thoughts as recent as the

day of the suspension, did not inform student's parents of the suspension, drove student home

without determining whether student's parents were home even though school officials knew

student had access to firearms, and student fatally shot himself while unsupervised at home);

*Sutton*, 173 F.3d at 1241 (student suffering from severe cerebral palsy, mental retardation, and

total blindness and inability to speak stated a claim that shocked the conscience where student's

---

[8] *See also Ruiz*, 299 F.3d at 1183-84 (state defendants could not be held liable for the
death of plaintiff's son at a privately-run, state-licensed day care center, because the conduct of
defendants in failing to conduct the requisite background and insurance checks on day care
center did not shock the conscience).

mother informed defendant school officials that her son had been sexually molested in a bathroom by another student offender, officials promised (but failed) to supervise student while in the bathroom, and officials caught same offender sexually molesting student a second time in the bathroom).  In each of these cases, the defendants created a danger for specific plaintiffs, and not simply for the population at large.

Based on these cases, the Court concludes that Defendants Cockerham's and Gurule's conduct, as alleged by Plaintiffs, does not shock the conscience.  Plaintiffs have not alleged facts indicating that Defendants acted with knowledge of a particular risk to E.M.  Rather, the facts as alleged by Plaintiffs, *i.e.*, that Defendants allowed A.C., A.P., and B.L. to roam the halls freely and without supervision knowing the security equipment was defective and the security guards inadequate, indicate that any risk posed was directed at large to the population of students attending Carlos F. Vigil Middle School.  For this reason, the Court concludes that Plaintiffs have failed to allege conduct that "shocks the conscience."  Accordingly, Plaintiffs have not met their qualified immunity burden of proof of stating a constitutional violation.  The Court therefore grants Defendant Cockerham's and Defendant Gurule's motions to dismiss on the grounds of qualified immunity for this reason as well.[9]

III.   Dismissal of Remaining State Law Claims

The Court has determined that the federal claims should be dismissed, leaving only the supplemental state law claims.  Under 28 U.S.C. § 1367(a), when a district court has original

---

[9] Because the Court concludes that Plaintiffs have failed to allege facts satisfying the first and sixth requirements of a danger creation theory, the Court need not, and therefore does not, consider Defendants' remaining arguments that Plaintiffs have failed to satisfy the second and fourth requirements.

jurisdiction over a civil action, "it has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c). A district court is "well within its discretion in declining supplemental jurisdiction over the remainder of" a case when it dismisses a plaintiff's federal claims. *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1139 (10th Cir. 2004). When a federal claim no longer supports supplemental jurisdiction, the United States Court of Appeals for the Tenth Circuit has recognized that, consistent with 28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state law claims without prejudice. *See Roe v. Cheyenne Mountain Conference Resort, Inc*., 124 F.3d 1221, 1237 (10th Cir. 1997); *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).

Because the court will dismiss the federal claims that support original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and those claims will be dismissed without prejudice.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that the Motion by Defendant AKAL Security, Inc. for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c), filed July 24, 2007 [Doc. 93], is hereby **GRANTED IN PART** as follows:

(1)     Defendant AKAL's motion for judgment on the pleadings with respect to Plaintiffs' negligence claim against it is DENIED;

(2)     Defendant AKAL's motion for judgment on the pleadings with respect to

Plaintiffs's Section 1983 substantive due process claim against it is GRANTED; and

(3)      Defendant AKAL's motion for judgment on the pleadings with respect to Plaintiffs' claim for injunctive relief against it is GRANTED.

**IT IS FURTHER ORDERED** that Defendant Dr. David Cockerham's Motion to Dismiss on the Basis of Qualified Immunity, filed August 2, 2007 [Doc. 98], is GRANTED, and that Plaintiffs' 42 U.S.C. Section 1983 substantive due process claim against Defendant Cockerham is dismissed.

**IT IS FURTHER ORDERED** that Defendant Benjamin Gurule's Motion to Dismiss on the Basis of Qualified Immunity, filed August 2, 2007 [Doc. 100], is GRANTED, and that Plaintiffs' 42 U.S.C. Section 1983 substantive due process claim against Defendant Gurule is dismissed.

**IT IS FURTHER ORDERED** that, having dismissed the federal claims giving rise to to original federal jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, so that the remaining state law claims are DISMISSED without prejudice.

Dated this 26th day of February 2008.


_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE

31